# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

NEW YORK COMMUNITIES FOR
CHANGE,

      Plaintiff,

        v.

NEW YORK CITY  DEPARTMENT OF
EDUCATION and NEW YORK CITY
SCHOOL CONSTRUCTION AUTHORITY,

      Defendants.

**PLAINTIFF NYCC'S RESPONSE
IN OPPOSITION TO DEFENDANTS'
OBJECTIONS TO THE REPORT
AND RECOMMENDATION**

Case No. CV 11-3494

Hon. Sterling Johnson, Jr. (SJ) (CLP, MJ)

MIRANDA MASSIE
CHRISTINA GIORGIO
New York Lawyers for the Public Interest
151 West 30th Street, 11th Floor
New York, NY 10001
(212) 244-4664

RICHARD A. HORSCH
MIHIR A. DESAI
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................... 1

STANDARD OF REVIEW ..................................................... 3

ARGUMENT ............................................................... 3

I.     Magistrate Judge Pollak Correctly Concluded That NYCC Has Standing To
       Bring Claims Under TSCA And RCRA ..................................4

II.    Magistrate Judge Pollak Correctly Concluded That NYCC's Complaint Fully
       Satisfies Applicable Pleading Requirements ........................7

       A.     The Report Correctly Concluded that NYCC Has Pled a Plausible
              TSCA Claim ................................................. 7

       B.     The Report Correctly Concluded that NYCC Has Pled a Plausible
              RCRA Claim ................................................. 8

              1.     Magistrate Judge Pollak correctly found that NYCC has
                     alleged sufficient facts for RCRA contributor liability...................8

              2.     Magistrate Judge Pollak properly found that NYCC has pled
                     plausible claims for RCRA "disposal" and "storage"...................11

              3.     Magistrate Judge Pollak correctly recommended that
                     Defendants' Motion to Dismiss the RCRA claim as applied
                     to aging PCB light ballasts that will inevitably leak be denied
                     pending completion of discovery...................................14

              4.     RCRA's Integration Clause does not bar NYCC's RCRA
                     claim..............................................................15

III.   The Magistrate Judge Correctly Determined That EPA  Is Not Diligently
       Prosecuting Leaking PCB Light Ballasts.................................17

IV.    The Magistrate Judge Properly Rejected Defendants'  Primary Jurisdiction
       Argument and Determined That This Court Can Adjudicate NYCC's Claims.....20

V.     The Magistrate Judge Properly Concluded that NYCC Has Complied With
       The Notice Requirements For TSCA and RCRA Citizen Suits ...........................21

VI.    Defendants' Objections to Certain Characterizations in the Report are
       Misleading and Should be Rejected.........................................24

# TABLE OF AUTHORITIES

## CASES

*Aiello v. Town of Brookhaven*, 136 F. Supp. 2d 81 (E.D.N.Y. 2001) ............................................... 9

*Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981 (9th Cir. 1994) ...................................... 4, 5, 6

*Amland Prop. Corp. v. Alum. Co. of Am.*, 711 F. Supp. 784 (D.N.J. 1989) ................................. 12

*Brod v. Omya, Inc.*, 653 F.3d 156 (2d Cir. 2011) .................................................................... 22, 23

*Catskill Mountain Chapter of Trout Unlimited, Inc.* v. *City of New York*,
  273 F.3d 481 (2d Cir. 2001) .......................................................................................... 23

*Connecticut Coastal Fisherman's Ass'n v. Remington Arms Co.*,
  989 F.2d 1305 (2d Cir. 1993) ........................................................................................ 13

*Connecticut v. Am. Elec. Power Co., Inc.*, 582 F.3d 309 (2d Cir. 2009),
  *rev'd on other grounds*, 131 S.Ct. 2527 (2011).............................................................. 6

*Conservation Law Found v. Reilly*, 950 F.2d 38 (1st Cir. 1991) ................................................ 4

*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199 (2d Cir. 2009) ........................................... 15

*Ctr. for Cmty Action & Envtl Justice v. Union Pac. Corp.*,
  2012 U.S. Dist. LEXIS 83051 (C.D. Cal. May 29, 2012) ........................................ 12, 16, 17

*Dague v. City of Burlington*, 935 F.2d 1343 (2d Cir. 1991) ...................................................... 15

*Ecological Rights Found. v. Pac. Gas & Elec. Co.,* 803 F. Supp. 2d 1056 (N.D. Cal. 2011) ..................... 8, 9

*Emhardt Ind. Inc. v. Duracell Int'l, Inc.*, 665 F. Supp. 549 (M.D. Tenn. 1987)............................ 13

*Hinds Invs. L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) ......................................................... 10

*Hudson River Fisherman's Ass'n v. County of Westchester*
  686 F. Supp. 1044 (S.D.N.Y. 1988) ............................................................................... 19

*Kentucky Oil & Ref. v. W.E.L. Inc.*
  No. 7:09-148, 2010 U.S. Dist. LEXIS 20517 (E.D. Ky. Mar. 8, 2010) ................................ 17

*McCormick v. Halliburton Co.*, 2012 U.S. Dist. LEXIS 46661 (W.D. Okla. Apr. 3, 2012) ................. 20, 21

*Nat'l Commc'ns Ass'n, Inc. v. Am. Tele. & Tele. Co.*, 46 F.3d 220 (2d Cir 1995)................................ 20, 21

*Niagara Mohawk Power Corp v. Jones Chem., Inc.* 315 F.3d 171 (2d Cir. 2003)........................ 9

*P.R. Campers' Ass'n v. P.R. Aqueduct & Sewer Auth.*,
  219 F. Supp. 2d 201(D. P.R. 2002) ............................................................................... 4

*San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (9th Cir 2002) ............................................ 23

*Sycamore Indus. Park Assocs. v. Ericsson, Inc.,* 546 F.3d 847 (7th Cir. 2008)................................................ 8

*U.S. v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373 (8th Cir. 1989).................................................................. 10

*U.S. v. Union Corp.*, 259 F. Supp. 2d 356 (E.D. Pa. 2003) ............................................................................ 17

*U.S. v. Vineland Chem.*, 692 F. Supp. 415 (D.N.J. 1988) ....................................................................... 15, 17

*United States v. Power Eng'g Co.*, 10 F.Supp.2d 1145 (D.Colo. 1998),
    *aff'd* 191 F.3d 1224 (10th Cir. 1999) ............................................................................................................ 12

*Wash. Toxics Coalition v. EPA*, 2002 U.S. Dist. LEXIS 27654 (W.D. Wash. 2002)..................................... 4

*Wyble v. Gulf S. Pipeline Co., L.P.*, 308 F. Supp. 2d 733 (E.D. Tex. 2004).................................................. 4

*Zands v. Nelson*, 797 F. Supp. 805 (S.D. Cal. 1992) ...................................................................................... 10

## STATUTES AND RULES

40 C.F.R. § 254.3(a).......................................................................................................................................... 22

40 C.F.R. § 260.10 ............................................................................................................................................ 12

40 C.F.R. § 261.8 .............................................................................................................................................. 16

40 C.F.R. § 702.62(a)........................................................................................................................................ 22

42 U.S.C. § 6972(b) .......................................................................................................................................... 12

42 U.S.C. § 9601(29) ........................................................................................................................................ 12

**PRELIMINARY STATEMENT**

In accordance with Rule 72 of the Federal Rules of Civil Procedure, New York Communities for Change ("Plaintiff" or "NYCC") respectfully submits this Response to the New York Department of Education's and New York School Construction Authority's (collectively, "Defendants") Objections to the Magistrate Judge's Report and Recommendations ("Objections") in the above-captioned case.

After a careful review of the record, Hon. Magistrate Judge Pollak ("Mag. J. Pollak") issued a thorough and well-reasoned Report and Recommendation (the "Report"), and correctly determined that Defendants' Motion to Dismiss should be denied.  She reached her recommendations following extensive briefing, oral argument, and limited post-hearing briefing.  Defendants now come before this Court and, with little exception, repeat the same arguments and cite the same cases already considered at length and rejected by Mag. J. Pollak in her Report.  Defendants' Objections are easily dispensed with and merit little attention from the Court.

Though Defendants' Objections are a mere restatement of their past arguments to Mag. J. Pollak, this is not the full story.  Defendants claim to have implemented two approaches to address leaking PCB ballasts in City schools, both of which are woefully deficient and wholly inadequate.  First, under Defendants' $844 million "NYC Schools Comprehensive Plan: Greener, Healthier Schools for the 21st Century" ("Greener Schools Plan"), Defendants represent that they will replace light ballasts as part of a comprehensive energy-efficiency initiative to comply with Local Laws 87 and 88 which includes boilers, insulation and sensors.  Defendants state that this plan will take nine years (from now) to complete, which, as it relates to the replacement of PCB ballasts, both EPA and the New York City Counsel have criticized as being entirely too long.  Regardless, any commitments to replace PCB ballasts are entirely voluntary and non-binding on Defendants.  Second, under Defendants' "visual inspection program," custodians are instructed only to look up at light fixtures, from the floor, for visual signs of fluid leaks beneath a metal plate enclosure or onto the ceiling.  This cursory procedure effectively ensures that leaked PCB fluid goes undetected, because the only adequate means of discovering many leaks is to climb a

ladder and remove the lens and metal plate that cover the ballasts to view the fixture's interior itself. Because Defendants refuse to take this necessary step, leaked PCBs not visible from the floor volatilize and children inhale the vapor for eight hours or more each day for potentially the entire 13 years of their public school education.

It is no surprise that as a result of these policies, two disturbing incidents occurred at the start of the 2012 school term.  In the first incident, on the first day of school at PS 41 in Staten Island, PCBs spilled from a light ballast directly onto a fifth-grade student's desk and clothes while she sat at her desk.[1] Subsequent action to remove the light ballasts in the same classroom uncovered PCB leaks in six of the nine ballasts that were examined.  A few days later, on September 10, 2012, PCBs spilled out of a light ballast in a guidance counselor's office at IS 204 in Long Island City, Queens, in full view of a custodian.[2]  These incidents are a strong rebuke to Defendants' claim that their "visual inspection program" is sufficient to protect the health and safety of school children.

At bottom, Defendants' initial motion and their Objections are nothing more than a tactic to delay the inevitable for another nine years:  the replacement of aged and leaking PCB ballasts that long ago reached their useful life and that are undoubtedly failing.  Though EPA estimates that the lifespan of PCB ballasts is 10-15 years, the *youngest* PCB ballasts in City schools are more than 30 years old.  *See* SAC, Ex. D at 2.  The recent incidents at PS 41 and IS 204 have proven Mag. J. Pollak's prediction to be true: "given the age of the lights, the number of ballast leaks is practically guaranteed to increase throughout the course of this litigation."  R&R at 55.[3]  These events also demonstrate beyond doubt that neither Defendants' Greener Schools Plan nor their visual inspection program are sufficiently addressing the overwhelming incidence of leaking PCBs in the New York City public school system.

---

[1] *See* Beth Fertig, *Toxic Drip Prompts Swift DOE Response*, WNYC SCHOOL BOOK, Sept. 11, 2012, *available at*: http://www.schoolbook.org/2012/09/11/toxic-drip-prompts-swift-doe-response (last accessed, Oct. 4, 2012).

[2] *See* Domenick Rafter, *LIC school incident sheds light on PCBs*, QUEENS CHRONICLE, Sept. 27, 2012, *available at*: http://www.qchron.com/editions/queenswide/lic-school-incident-sheds-light-on-pcbs/article_c282b90f-f3fb-5a7a-81b5-a0d8049fc227.html (last accessed, Oct. 4, 2012).

[3] References to "R&R" indicate citations to the "Report and Recommendation" of the Honorable Cheryl Pollak, United States Magistrate Judge, on August 29, 2012.

**STANDARD OF REVIEW**

Generally, a district court reviews a magistrate judge's findings to which a party objects under a *de novo* standard. 28 U.S.C. § 636(b)(1)(C). However, where a party simply rehashes the arguments made in its original submission, the district court reviews the report only for clear error. *See Trapp-Miley v. City of New York*, No. 09-cv-3933, 2012 WL 1068084, at *3 (E.D.N.Y. Mar. 29, 2012) ("The Court reviews [a report and recommendation] only for clear error, however, when a party makes conclusory general objections, or simply reiterates his original arguments"); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error when objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [submissions]"). A district court also reviews for clear error any portion of the report that is not objected to. *See Price v. City of New York*, 797 F. Supp. 2d 219, 223 (E.D.N.Y. 2011).

**ARGUMENT**

As Mag. J. Pollak correctly recommends to the Court, NYCC has satisfied all the requirements for proceeding with its claims. EPA has taken no steps to prosecute leaking PCB ballasts or to bind Defendants to take safe and corrective action within a responsible period of time. In this vacuum, NYCC has pled meritorious claims under TSCA and RCRA, has demonstrated its direct interest in ridding City schools of dangerous PCBs, and satisfied the jurisdictional requirements for bringing suit. Given her careful consideration and analysis of all the issues, Mag. J. Pollak's recommendations withstand any level of scrutiny. As set forth below, however, none of the objections raised by Defendants is supported by law, and nearly every objection is no more than a rehash of arguments already considered and rejected in the Report. In many instances, the objections are a word-for-word cut-and-paste of Defendants' previous briefing. Accordingly, the Report easily surpasses the low bar of clear error review that applies to nearly all of Mag. J. Pollak's recommendations.

The Report correctly recommends that Defendants' Motion to Dismiss be denied, and Plaintiff respectfully asks the Court to adopt this recommendation in its entirety.

3

## I.

### Magistrate Judge Pollak Correctly Concluded That NYCC Has Standing
### To Bring Claims Under TSCA And RCRA

The Report concludes that NYCC has standing, in at least a representational capacity, to proceed with its claims under TSCA and RCRA.[4]  This is true both as to the 25 schools for which NYCC has submitted member declarations, and as to the other school buildings that are likely to have T12 ballasts. Defendants' Objections as to standing simply reiterate their previous arguments, and should be rejected.[5]

Defendants only objection to the Report's findings on standing is their argument, already considered and rejected by Mag. J. Pollak, that NYCC does not have standing to seek a system-wide remedy based on 25 member declarations.  Defendants primarily attempt to distinguish *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981 (9th Cir. 1994), a case that was well briefed by both sides and extensively considered by Mag. J. Pollak in the Report.[6]  As the Report concludes, *Alaska Center* is "more instructive" than cases cited by Defendants.[7]  *See* R&R at 36.

Defendants attempt to distinguish *Alaska Ctr.* on two grounds: first, that in *Alaska Ctr.* the court found that Congressional directives through the Clean Water Act ("CWA") imposed a "precise duty" on EPA to implement TMDLs at issue there, and second, that the waters of Alaska are interrelated for

---

[4] Defendants refer to, but do not object to the Report's analysis as to NYCC's organizational standing.  *See* Def. Obj. at 8 n. 6.  Because the Report did not reach a recommendation on this issue, *see* R&R at 38 n. 12, Plaintiffs do not respond here to any points raised by Defendants on this issue.

Defendants also do not object to the Report's finding that NYCC's claims are redressable nor do they challenge the standing of the 25 parents of students to bring claims with respect to the schools they attend.

[5] *Compare* Def. Obj. at 5-8 *with* Def. Mem. in Support at 10-12.  References to "Def. Obj." are to Defendants' Objections to the Report and Recommendation Recommending to Deny, in its Entirety, Defendants' Motion to Dismiss All Complaints or, in the Alternative, Stay the Proceedings, served on September 17, 2012.

[6] *See* Def. Reply Mem. at 16; Tr. at 86; Letter Response to Additional Declarations (May 8, 2012) at 2; R&R at 36. References to "Def. Reply Mem." are to Defendants' Reply Memorandum of Law In Support of the Defendants' Motion to Dismiss All Complaints, or, in the Alternative, Stay the Proceedings, served on February 13, 2012.

[7] In their Objections, Defendants rely exclusively on *Conservation Law Found v. Reilly*, 950 F.2d 38 (1st Cir. 1991); *Wyble v. Gulf S. Pipeline Co., L.P.*, 308 F. Supp. 2d 733 (E.D. Tex. 2004), *P.R. Campers' Ass'n v. P.R. Aqueduct & Sewer Auth.*, 219 F. Supp. 2d 201(D. P.R. 2002), and *Wash. Toxics Coalition v. EPA*, 2002 U.S. Dist. LEXIS 27654 (W.D. Wash. 2002), for their argument.  *See* Def. Obj. at 6.  Defendants have extensively briefed these cases already.  *Compare* Def. Obj. at 6 *with* Def. Reply Mem. at 16-17; Letter Response to Additional Declarations (May 8, 2012) at 6; and Tr. 86-91.

standing purposes because of regulations under the CWA.  *See* Def. Obj. at 7-8.  Here, Defendants also

have a "precise duty" and the schools at issue are interrelated.  *See* R&R at 36-37.  Defendants undeniably

have a duty to safeguard the health and safety of children who, on a daily basis, enter and use the

buildings that Defendants are legally obligated to maintain.  It is immaterial that this duty does not flow

from "Congressional directive" as in *Alaska Ctr.*; it is still a singular and precise duty.  It is equally

immaterial that the interrelatedness of the schools does not flow from TSCA or RCRA, because the

schools in the City school system are still interrelated.  *Alaska Ctr.*'s reasoning is persuasive:

> It would be contrary to congressional directive to permit individual plaintiffs or a federal
> court to deal with only a fraction of the waters and, in effect, impose their own
> prioritization upon the EPA by limiting the scope of an ordered remedy to specific
> streams of paramount concern to the parties before the court.

20 F.3d at 985.  Similarly, here it would be contrary to Defendants' duty to students for Defendants to

address PCB ballast leaks in only select school buildings.  Magistrate Judge Pollak correctly found that

NYCC has standing at least as to the 25 schools for which its member-parents submitted declarations, a

finding that Defendants do not challenge.  *See* R&R at 37.  It would be plainly inconsistent with

Defendants' duty to children attending all other City schools with PCB ballasts for Defendants to now

address PCB ballast leaks in only these 25 school buildings, simply because of NYCC's more direct

interest in these buildings, while relegating the more than 600 other school buildings with T12 ballasts to

the 10-year schedule (now nine years) under their Greener Schools Plan.

Defendants disagree with the Report's finding that "like the water bodies in Alaska, New York

City schools are interrelated – a parent and her child have an interest in the safety of schools beyond the

particular school the child attends."  Def. Obj. at 8, citing R&R at 36-37.  In doing so, however,

Defendants dismiss the Report's reasoning that schoolchildren will move from one building to another as

they progress in their studies and through their participation in sports and other recreational activities.

*See* R&R at 37.  As explained by NYCC during oral argument, all children whose parents have submitted

declarations have numerous chances to be exposed to PCBs during their schooling, particularly, over the

next nine years.  *See* Tr. at 61-62.  Defendants object to the Report's reliance on this description of how

5

children will likely enter many different school buildings during their 13 years in the school system, because it was not included in the 25 parent declarations submitted.  *See* Def. Obj. at 8.  However, these are fair (and common sense) inferences that can be drawn from the allegations.  *See Connecticut v. Am. Elec. Power Co., Inc.*, 582 F.3d 309, 333 (2d Cir. 2009), *rev'd on other grounds*, 131 S.Ct. 2527 (2011), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Moreover, other factors here strongly support the Report's finding of a singular and precise duty and the interrelatedness of the schools.  Magistrate Judge Pollak either noted or had before her the following facts, none of which Defendants have disputed or can dispute:

- The New York City school system is a single system across all five Boroughs;

- Defendants have exclusive authority and control over the school buildings and the T12 light fixtures in those buildings;

- Defendants' visual inspection program (albeit inadequate) applies system-wide; and

- Defendants' Greener Schools Plan is system-wide.

In short, the reasons that the Ninth Circuit found to support the plaintiff's standing in *Alaska Ctr.* are the same reasons that support NYCC's standing in this case.

Finally, Defendants' suggestion that the relief here would involve "hundreds of discrete and separate projects" at hundreds of school buildings throughout the City has no merit.  *See* Def. Obj. at 7.  The action that is required here – the changing of a leaking light fixture – is one that is undertaken thousands of times of day by electricians throughout the United States.  No doubt, a simple, uniform protocol could be developed (if it has not been already) to address the replacement of light fixtures in City schools system-wide.  In fact, Defendants purport to have already put in place a system-wide, albeit flawed, uniform visual inspection program.  NYCC respectfully asks the Court to adopt the Report's recommendation that Defendants' Motion to Dismiss for lack of standing be denied.

## II.

### Magistrate Judge Pollak Correctly Concluded
### That NYCC's Complaint Fully Satisfies Applicable Pleading Requirements

Magistrate Judge Pollak correctly concluded that NYCC's TSCA and RCRA claims meet the pleading standards of *Twombly* and *Iqbal*. Defendants' Objections add nothing to the record and simply reargue matters already covered in their briefing.[8] The Court should ignore the Defendants' Objections and adopt the Report's recommendations.

### A.    The Report Correctly Concluded that NYCC Has Pled a Plausible TSCA Claim

In their Objections, Defendants merely rehash their past argument that NYCC has failed to state a TSCA claim because it does not identify a leaking PCB ballast that has not already been addressed by Defendants, a pleading standard Defendants incorrectly assert is required by the Federal Rules.

In issuing her Report, however, Mag. J. Pollak was fully aware of this and all the other TSCA-claim arguments Defendants recycle in their Objections, carefully considered them, and properly recommended denial of the motion. *See* R&R at 40-41. As the Report correctly recognized, that is because a single leaking or improperly remediated PCB ballast in a City school is a violation of TSCA, whether or not Defendants know of the leak.[9] Moreover, nothing in the Federal Rules requires Plaintiff to point to a specific existing TSCA violation that has not been remediated. Rather, all that is required is that sufficient facts be pled to allow a <u>reasonable inference</u> that such a violation exists. Given EPA's conclusion that there is a "prevalence" of leaking ballasts in City schools, along with the fact that leaking

---

[8] *Compare* Def. Obj. at 15 *with* Def. Mem. in Support at 10, 20 and Def. Reply Mem. at 6.

[9] As stated in our original submissions, leaking PCB ballasts are a clear violation of TSCA. EPA states that: "<u>Light ballasts that are leaking PCBs are in violation of the law and should be immediately removed and spills properly cleaned up</u>." Proper Maintenance, Removal, and Disposal of PCB-Containing Fluorescent Light Ballasts, EPA ("EPA PCB Ballast Site"), *available at*: <u>http://www.epa.gov/epawaste/hazard/tsd/pcbs/pubs/ballasts.htm#ballast08a</u> (last visited Oct. 4, 2012). *See also* Plaintiff Mem. at 11

Improperly remediated historical PCB leaks from light ballasts also violate TSCA:

[A] PCB-containing ballast that is leaking, or has leaked PCBs in the past and has been replaced without proper remediation or disposal of spilled PCBs, is considered improper disposal of PCBs.

Plaintiff's Second Amended Complaint ("SAC"), Ex. D (Dec. 15, 2010 letter from J. Enck, EPA, EPA Regional Administrator).

ballasts were found in nearly 100% of the classrooms in the schools inspected at the time of the motion, the only logical inference is that <u>at least</u> one leaking ballast is certain to exist in the more than 600 other schools identified by Defendants as having T12 lights.  Although this is all that is needed to state a claim for a TSCA violation, here, the most logical inference is that several thousands of leaking PCB ballasts exist.  Magistrate Judge Pollak was entirely correct in drawing those inferences.  *See* R&R at 42 ("Assuming those facts as true and <u>drawing all inferences in favor of plaintiff</u>, as the Court must on a motion to dismiss … the Court finds that plaintiff has adequately pleaded a plausible claim under TSCA…").  Finally, if there were any doubt (and there should be none) the recent events at PS 41 and IS 204 evidence the certainty that leaks have occurred across the school system and will inevitably continue to occur in the future.[10]

**B.      The Report Correctly Concluded that NYCC Has Pled a Plausible RCRA Claim**

   1.   <u>Magistrate Judge Pollak correctly found that NYCC has alleged sufficient facts for RCRA contributor liability</u>

        In objecting to the Report's recommendation that their Motion to Dismiss the RCRA claim be denied, Defendants once again argue that RCRA's "contributor liability" for a finding of an imminent and substantial endangerment requires a strict showing of "active conduct" on the part of Defendants.[11]  *See* Def. Obj. at 16-19.

        The two cases they discuss at length – *Sycamore Indus. Park Assocs. v. Ericsson, Inc.,* 546 F.3d 847 (7th Cir. 2008) and *Ecological Rights Found. v. Pac. Gas & Elec. Co.,* 803 F. Supp. 2d 1056 (N.D. Cal. 2011), *see* Def. Obj. at 17-18, are the same two cases they discussed at length in their Memo in

---

[10] Defendants' other objection is to suggest that Magistrate Judge Pollak did not "fully consider the relevance of the TSCA regulations."  *See* Def. Obj. at 15.  Defendants' objection is premised on the same argument that Defendants made in their briefing and extensively at oral argument.  Though in-use, non-leaking ballasts may not trigger a TSCA violation, Defendants overly complicate the matter, and seek to avoid their responsibility under the statute, by suggesting that TSCA does not require Defendants to inspect for leaking ballasts.  This is entirely beside the point.  As the EPA has stated, and the Report recognizes, a single leaking PCB ballast constitutes a violation of TSCA.  *See* R&R at 41.  There is at least a reasonable likelihood, if not a certainty, that ballast leaks exist across NYC public schools.

[11] *Compare* Def. Obj. at 16-19 *with* Def. Reply Mem. at 7-10.

Support of the Motion to Dismiss (p. 21-23),[12] Reply Memo (p. 6-8), and during oral argument (Tr. at 28-29).[13]  Both were already carefully considered by the Court in its Report and discredited.  *See* R&R at 44-45; 47-49.[14]

In repeating their argument, Defendants again ignore three important points.  First even if RCRA liability requires, as Defendants suggest, a strict showing of "active conduct" (and it does not), NYCC has sufficiently alleged facts for such a showing, as the Report properly recognizes.  *See* R&R at 48-49.  NYCC has alleged that Defendants have improperly remediated failed and leaking PCB ballasts.  *See* R&R at 48, *citing* SAC ¶ 36 ("Specifically, plaintiff alleges that '[i]n many cases, … defendants replaced a failed, leaking PCB ballast with an intact ballast, but continued to use the overall fixture housing the ballast, which the ballast leak had contaminated'").

Second, Defendants continue to ignore the fact that district courts in the Eastern District of New York, and the Second Circuit Court of Appeals itself, have rejected the need for a showing of "active conduct" for RCRA "contributing to" liability.  *See Aiello v. Town of Brookhaven*, 136 F. Supp. 2d 81, 111-13 (E.D.N.Y. 2001) ("active involvement" is not required for RCRA's "contributing to" component in the Second Circuit);  *Niagara Mohawk Power Corp v. Jones Chem., Inc.* 315 F.3d 171, 178 (2d Cir. 2003) (noting that the "process of leaking seems to need no human agency").  Neither of the two cases

---

[12] References to "Def. Mem. in Support" are to the Memorandum of Law in Support of the Defendants' Motion to Dismiss All Complaints, or, in the Alternative, Stay the Proceedings, served December 19, 2011.

[13] Defendants have lifted word-for-word their two-page description of *Sycamore* and *Ecological Rights* from their initial brief in support of their Motion to Dismiss and have pasted it into their Objections.  *Compare Def. Obj.* at 17-18 *with* Def. Mem. in Support at last par. app. 21-22.  Yet, Defendants never provide any specifics as to why they believe Mag. J. Pollack may have incorrectly interpreted them.

[14] As the Report correctly notes, these two cases on which Defendants heavily rely in their effort to show the requirement of a strict "active conduct" standard for RCRA liability, are distinguishable.  *See* R&R at 47-49.  *Ecological Rights* addresses the "leaching" of chemicals, which does not constitute a "disposal" (as opposed to the leaking or spilling here, which does).  *See* Plaintiff NYCC's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (hereinafter "Plaintiff Mem.") at 17.  As the Report also notes, the case also supports a more liberal construction of "contributing to" by reasoning that "the discharge of hazardous waste leaked or spilled out from a container intended to hold the waste" may constitute RCRA liability.  *See* R&R at 48, *quoting Ecol. Rights*, 803 F. Supp. 2d at 1065.  Defendants' reliance on *Sycamore* is equally misplaced.  After considering this case, the Report found that its restrictive interpretation of "contributing to" does not foreclose a more liberal interpretation and Mag. J. Pollak "decline[d] to find that [NYCC's] allegations are insufficient as a matter of law."  R&R at 48.

that form the bulk of Defendants' argument in their original submissions and again here – *Sycamore* and *Ecological Rights* – was decided in the Second Circuit.

Third, Defendants fail to point out that the majority of cases on which they have relied make clear that some measure of <u>control and authority over the waste</u> at the time of disposal is all that is needed to satisfy RCRA's "contributing to" component.  *See, e.g., Hinds Invs. L.P. v. Angioli*, 654 F.3d 846, 852 (9th Cir. 2011) ("to state a claim predicated on RCRA liability for 'contributing to' the disposal of hazardous waste, a plaintiff must allege that the <u>defendant had a measure of control over the waste</u> at the time of its disposal or was otherwise actively involved in the waste disposal process."); *accord U.S. v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1383 (8th Cir. 1989) (dismissal of RCRA claim overturned because there was a reasonable inference of defendant's 'authority to control' … any waste disposal"). The Report properly recognized this fact: "[e]ven cases outside this Circuit have made it clear that some level of control over the waste process, rather than active involvement in disposal, is sufficient to constitute 'contributing' for RCRA purposes."  R&R at 46 (citation omitted).

Defendants also attempt to explain away *Zands v. Nelson*, 797 F. Supp. 805 (S.D. Cal. 1992), which held owners of USTs with passive leaks liable under RCRA, by suggesting that the extensive regulations governing USTs make *Zands* distinguishable.  *See* Def. Obj. at 18.  There are, of course, extensive regulations covering PCBs.  But that was not the basis for the *Zands* decision.  Its holding is clear:

> Individuals who own or operate gas stations are responsible for gasoline that leaks from the piping  system or the gas tanks there. Indeed, the direct relationship between the leakage and the equipment owned or operated for use of the gas station is sufficient to prove the element of contribution.

*Id.* at 810.  That USTs may be regulated under other sections of RCRA played no part in the *Zands* court's decision.

Defendants also object to the Report for suggesting that contributor liability should not be deemed to apply to passive conduct simply because another more responsible party is not available.  *See*

Def. Obj. at 18-19.  But Defendants twist the meaning of the Report's words.[15]  The Report does not suggest that contributor liability is premised merely on whether a court can or cannot find another responsible entity.  Instead, the foundation of the Report's conclusion as to contributor liability is that it attaches when an entity exerts authority and control over waste management, as Defendants do here.  As noted in the Report, no case cited by Defendants supports the position that Defendants request this Court to take.  *See* R&R at 49.

Where, as here, Defendants have actual knowledge of the prevalence of PCB leaks in City schools, have sole control and authority over the source of those leaks, but refuse to take appropriate measures to prevent or remediate those leaks, there can be no conclusion other than that they are "contributing to" the ongoing and inevitable leaking of PCBs.

    2.   Magistrate Judge Pollak properly found that NYCC has pled plausible claims
          for RCRA "disposal" and "storage"

Defendants next object to the Report's finding that NYCC has alleged facts sufficient to support a claim of either RCRA disposal or storage.

    a.   Disposal

In asserting that there is no disposal here, Defendants simply recycle the argument from their initial submissions that RCRA "disposal" does not apply to waste that remains strictly within the confines of a building.[16]  First, even if Defendants' cramped reading of the definition of disposal were correct, Mag. J. Pollak properly recognized that NYCC has alleged several ways in which leaked PCBs would

---

[15] The precise words used by the Magistrate Judge are: "none of the cases defendants cite in support of their limited construction of 'contributed to' take the position that the defendants now ask this Court to take – namely, dismissal of claims against a defendant based on lack of causation, even though a RCRA violation may have occurred and the court cannot identify any entity more responsible for the alleged violation than the defendant." R&R at 49. In so stating, we do not understand the Magistrate Judge to be suggesting (as Defendants assert) that in the four cases she then cites there were other parties responsible for the violation.  Rather we understand the Report to be saying that in those cases there was no RCRA violation for reasons other than the "contributing to" factor.  (For example, the leaching of chemicals from utility poles in *Ecological Rights* does not constitute "disposal".)  In any event, when fairly read, the Report (consistent with other courts in the Eastern District of New York and the Second Circuit Court of Appeals) rejects the strict "active conduct" requirement suggested by Defendants and looks instead to the more relevant test of authority and control, which the allegations here clearly satisfy.

[16] *Compare* Def. Obj. at 20 *with* Def. Br. at 24-25 and Def. Reply Mem. at 9.

escape the confines of a school building.  *See* R&R at 50-51.  For example, NYCC noted the probability that dust contaminated with volatilized PCBs could enter the building's ventilation systems, exit the building and settle on the ground.[17]  *See* R&R at 51, *citing* Plaintiff Mem. at 19.  Also, leaked PCBs can be carried out of school buildings when children and teachers step in leaked PCB fluid and track it out of the school into the environment.  *See* R&R at 50, citing Tr. at 69-70.  The recent incidents of spilled PCB fluid at the school buildings in Staten Island and Queens are telling evidence that such a result is more than plausible.

Moreover, after a thorough analysis of the case law, the Report correctly concluded that "[n]umerous decisions belie defendants' cramped interpretation of 'disposal.'"  Defendants challenge the Report's finding, noting that many of the "disposal" cases cited in the Report were CERCLA cases, and that CERCLA includes a broad definition of "facility," which includes buildings.  *See* Def. Obj. at 20. But Defendants' interpretation of the CERCLA cases referred to by Mag. J. Pollack is much too narrow. First, CERCLA does not merely have the same definition of "disposal" as RCRA, it specifically incorporates by reference the RCRA definition. CERCLA provides: "The term 'disposal' … shall have the meaning provided in section 1004 of [RCRA]." 42 U.S.C. § 9601(29). Although some of the cases Defendants attempt to distinguish do, as one would expect in any CERCLA case, take note of CERCLA's definition of "facility," nowhere do those cases state that the definition of "disposal" is in any way

---

[17] *Ctr. for Cmty Action & Envtl Justice v. Union Pac. Corp.*, 2012 U.S. Dist. LEXIS 83051 (C.D. Cal. May 29, 2012), a case cited by Defendants in their Objections, *see* Def. Obj. at 27, and decided after the close of briefing on Defendants' Motion to Dismiss, provides strong support for the proposition that PCBs that leak from a ballast, thus becoming a RCRA solid or hazardous waste, and then volatilize or become attached to dust, remain RCRA wastes:

> Once solid waste exists, RCRA governs its disposal, storage and treatment. For this reason, RCRA covers the vapors that emanate from solid waste and the air emissions that result when solid waste is burned.  Similarly, RCRA governs waste that takes a solid or liquid form when created, even if the waste is produced in a process that begins with a non-waste feedstock. See *United States v. Power Eng'g Co.*, 10 F.Supp. 2d 1145, 1150 (D.Colo. 1998), *aff'd* 191 F.3d 1224 (10th Cir. 1999) (finding that a mist of chromium, lead, mercury and arsenic that  resulted from a process involving a non-waste feedstock was solid waste under RCRA).

*Id.* at *23.

different for CERCLA than it is for RCRA.[18]   To the contrary, the cases addressing disposal have simply concluded that the terms "into or on any land or water" included in the definition of "disposal" are to be interpreted broadly so as to encompass the inside of a building.  *See Amland Prop. Corp. v. Alum. Co. of Am.*, 711 F. Supp. 784, 791 (D.N.J. 1989) ("placement of hazardous wastes inside an enclosed manufacturing facility <u>may constitute disposal of such waste into or on any land</u> so as to satisfy the CERCLA definition") (emphasis added).   In short, to suggest, as Defendants do, that CERLCA's inclusion of the term "facility" or other terms in certain of its liability provisions, somehow changes the definition of the separate and distinct term "disposal" is unsupportable.[19]   In any event, all three cases Defendants attempt to distinguish were decided on motions for summary judgment, <u>after</u> discovery. The determination of the scope and breadth of the leaks, and whether the PCB waste is, as Defendants assert, limited to the classrooms or the school buildings, is a fact question that is not appropriate for a determination on a motion to dismiss.  *See* R&R at 53.

    b.  <u>Storage</u>

Repeating the identical argument from their Reply Brief,[20] Defendants next contend that PCB fluid that has leaked from a ballast but remains contained within the light fixtures does not constitute storage.  *See* Def. Obj. at 21-22.  In support of their position, Defendants again rely on a misreading of *Connecticut Coastal Fisherman's Ass'n v. Remington Arms Co.*, 989 F.2d 1305, 1316 (2d Cir. 1993), arguing that RCRA storage liability requires affirmative conduct rather than merely passive conduct. Defendants concede that this argument is simply a restatement of their discredited contention that "contributing to" liability requires a strict showing of "active conduct."  *See id.*  The Report has, of

---

[18] Of course, Defendants fail to note that RCRA's imminent and substantial endangerment provision also includes the term "facility": "including any past or present owner or operator of a treatment, storage, or disposal <u>facility</u>." 42 U.S.C. § 6972(b) (emphasis added).  "Facility" is not defined in RCRA itself, but EPA has defined the term for RCRA purposes as including a "structure," which certainly would include a school building. 40 C.F.R. § 260.10.

[19] Defendants attempt to distinguish *Emhardt Ind. Inc. v. Duracell Int'l, Inc.*, 665 F. Supp. 549, 574 (M.D. Tenn. 1987) by noting that the parties stipulated that the plants at issue there qualified as "facilities" under CERCLA. *See* Def. Obj. at 20-21.  But this is irrelevant to the court's determination that the spilling of PCBs in the plants during the manufacturing process constituted "disposal."

[20] *Compare* Def. Obj. at 22, *with* Reply Mem. at 10.

course, already addressed this strict "active conduct" assertion, correctly concluding that NYCC has

properly pled a RCRA claim. *See* R&R at 48; and discussion *supra* at 10-12. Equally important, the

Report considered Defendants' *Connecticut Coastal* argument and rejected it:

> Defendants …reiterate their contention that RCRA liability requires affirmative action,
> rather than merely passive conduct. (Def. Reply Mem. at 10). Defendants cite
> Connecticut Coastal Fisherman's Ass'n ... in support of their argument, but that case has
> no application here. Connecticut Coastal involved lead shot and clay targets . . . scattered
> in the waters of Long Island Sound. . . . Since the lead shot and clay targets were not
> being contained or held, the Second Circuit held that there was no RCRA liability for
> storage.

*See* R&R at 52 (citation omitted). This analysis is entirely correct. The scattering of lead shot in open

waters is a far cry from the PCB waste that accumulates and is "contained" in enclosed light fixtures here.

Finally, Defendants are fully aware that their visual inspection program cannot possibly detect the

thousands of leaks that invariably exist in more than 600 schools, but that cannot be identified without

lifting the light panels to inspect. Defendants' slack effort to identify these leaks and to remediate the

PCB waste is nothing more than a deliberate decision by them to "store" those PCB wastes within the

lighting fixtures, in some cases for another nine years. In short, if the Defendants' conduct does not

constitute disposal, then it must constitute storage. As Mag. J. Pollak properly held, "defendants can not

have it both ways – either the PCB leaks are contained within the fixtures, constituting 'storage' of the

leaked PCBs, or the PCBs leak outside of the fixtures and into the classroom and beyond, constituting

'disposal' for the purposes of RCRA." R&R at 52.

3. Magistrate Judge Pollak correctly recommended that Defendants' Motion to Dismiss the
RCRA claim as applied to aging PCB light ballasts that will inevitably leak be denied
pending completion of discovery

Defendants object to the Report's recommendation that Defendants' Motion to Dismiss the

RCRA claim as applied to aging, but not yet leaking, PCB ballasts, be denied pending discovery. *See*

Def. Obj. at 22-23. At bottom, Defendants' argument consists of a plea that they "are permitted to use

non-leaking PCB ballasts indefinitely." *See* Def. Obj. at 22. But this misses the premise of NYCC's

claim, and the Report's finding, entirely. PCB ballasts cannot be used indefinitely, as NYCC explains in

its Complaint, because as they age and deteriorate, PCB ballasts invariably break down and dramatically

14

increase the likelihood of leaks.  *See* SAC ¶¶ 35-38.  Although one could argue that intact PCB lights

ballasts might not have been deemed to pose an imminent and substantial endangerment in 1982, when

the TSCA regulations concerning intact PCBs were initially drafted, the overwhelming evidence of PCB

ballast leaks and the deteriorated condition of ballasts in City schools thirty years later, precludes any

such argument today.  As the Report correctly concludes, "the scope of the problem is not yet known" and

"given the age of the lights, the number of ballast leaks is practically guaranteed to increase throughout

the course of this litigation."  R&R at 55.  Any doubt as to her prediction should be put to rest by the two

recent PCB spill events at PS 41 and IS 204. [21]

    4.  <u>RCRA's Integration Clause does not bar NYCC's RCRA claim</u>

    Defendants also object to the Report's recommendation because, as they continue to urge, "in-use

PCB electrical equipment and associated PCB waste management issues are regulated under TSCA and

not RCRA."  Def. Obj. at 23, 28.  Yet again, Defendants' argument misses the mark and is entirely

repetitive of its previous submissions.[22]

    Defendants first attempt to discredit *U.S. v. Vineland Chem. Co. Inc.*, 692 F. Supp. 415 (D.N.J.

1988) and the Report's reliance on *Vineland*.  *See* Def. Obj. at 26.  Defendants' suggest that both the

Magistrate Judge here and the *Vineland* court ignored the introductory language in the section of RCRA

addressing integration, section 6905(b), that references both administration and enforcement.  *See id*.  But

it is the Defendants who ignore language.  Specifically, as *Vineland* recognizes, the last sentence of

---

[21] Defendants' argument also ignores the expansive scope of RCRA's imminent and substantial endangerment provision. *Dague v. City of Burlington*, 935 F.2d 1343, 1356 (2d Cir. 1991); *see also Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 212 (2d Cir. 2009) ("the combination of the word 'may' with the word 'endanger,' both of which are probabilistic, leads us to conclude that a reasonable prospect of future harm is adequate to engage the gears of [Section 7002(a)(2)(B)] so long as the threat is near-term and involves potentially serious harm.")

[22] Indeed, the entire section V.D(a) of Defendants' Objections, which describes the "Statutory and Regulatory History" of TSCA and RCRA, is copied, with a few minor exceptions, word-for-word from Defendants' briefing in this case. *Compare* Def. Obj. at 23-26 *with* Def. Mem. in Support at 26-29.  Likewise, Defendants' discussion from the last paragraph on page 26, to the last paragraph on page 27 of their Objection is a virtual cut-and-paste from the last paragraph on page 12 to the middle of page 15 of Def. Reply Mem.  Plaintiff respectfully requests that the Court disregard this section entirely.

section 6905(b) provides EPA the discretion to determine the scope of integration of RCRA. The
*Vineland* court's statement might well have been directed specifically to Defendants' objection here:

> Defendants' argument wrongly discounts the importance of Section 6905(b)'s last
> sentence. That sentence states, "[s]uch integration shall be effected *only to the extent that
> it can be done in a manner consistent with the goals and policies expressed in this Act. .
> .*" (emphasis added). This sentence, we believe, suggests that Section 6905(b) creates no
> rights in defendants to resist regulation; rather it constitutes an exhortation to the EPA to
> avoid unnecessary and overlapping regulation. Thus, the decision of when to regulate
> and under which statutes to regulate is left to the EPA's discretion.

*Vineland*, 692 F. Supp. at 420. Given that RCRA vests EPA, the agency tasked with RCRA enforcement,

the discretion to determine what RCRA provisions should be enforced through TSCA, it is not at all

surprising that EPA carved out a narrow set of RCRA regulations, but not enforcement under RCRA's

citizen suit provision. *See* 40 C.F.R. § 261.8. EPA, or any governmental agency for that matter, does not

lightly decide to limit its own enforcement authority. *See* R&R at 62 ("While the EPA may have believed

the regulatory scheme [under TSCA] was adequate, it says nothing about precluding the RCRA

enforcement mechanism that would be available in the event of a threat to human health").

In one of the rare instances where they do cite a new case, Defendants rely on *Ctr. for Cmty.

Action & Envtl. Justice v. Union Pac. Corp.*, 2012 U.S. Dist. LEXIS 83051 (C.D. Cal. May 29, 2012),

which was decided after the close of briefing on their Motion to Dismiss. *See* Def. Obj. at 27. There,

plaintiffs sued under RCRA for an abatement of air emissions from diesel trains, trucks and other

equipment. In dismissing the RCRA claim, the court reached the unremarkable conclusion that because

Congress expressly prohibited the regulation of air emissions from the sources at issue under the Clean

Air Act, that did not imply that Congress intended to regulate those same air emissions under RCRA:

> Applying RCRA to indirect sources of air pollution would thwart congressional intent
> and render the statutory prohibition meaningless. It would be unreasonable to assume that
> even though Congress expressly prohibited federal indirect source regulation under the
> CAA, it implicitly intended to regulate indirect source emissions through the citizen suit
> provision of RCRA.

*Id.* at *12-13. In no way can *Ctr. for Cmty. Action* be read to support Defendants' position here. Congress

has not expressly (or implicitly) prohibited regulation of PCB wastes under TSCA, nor has it done so

under RCRA. To the contrary, EPA's almost 10 years of wrestling with the question whether to regulate

certain aspects of PCB wastes under TSCA or under RCRA, *see* Def. Obj. at 23-26, evidences the fact that RCRA clearly covers PCB waste and that Congress intended that it do so.[23]  That EPA exempted some PCB waste from a limited number of specifically-identified RCRA regulatory requirements, but did not exempt those wastes from enforcement under RCRA's imminent and substantial endangerment section, further confirms Congress and EPA's intent. 40 C.F.R. § 261.8.  Finally nothing in *Ctr. for Cmty. Action* changes the fact that, as the Report correctly recognized, courts have long held that RCRA's imminent and substantial endangerment provisions apply to PCB waste.  *See* R&R at 58-61, *citing Vineland Chem.*, 692 F. Supp. at 420-21; *Kentucky Oil & Ref. v. W.E.L. Inc.*, No. 7:09-148, 2010 U.S. Dist. LEXIS 20517, at *7-10 (E.D. Ky. Mar. 8, 2010); and *U.S. v. Union Corp.*, 259 F. Supp. 2d 356, 399-400 (E.D. Pa. 2003).[24]  Plaintiff respectfully requests that the Court adopt the recommendation of the Report that NYCC be allowed to proceed with its claim under RCRA.

## III.

### The Magistrate Judge Correctly Determined That EPA
### Is Not Diligently Prosecuting Leaking PCB Light Ballasts

The Report sets forth a careful and thorough analysis of the Consent Agreement and Final Order ("CAFO") and concludes that there is "no question" that PCBs in light ballasts were not intended to be covered by the CAFO.  *See* R&R at 15 n. 9.  Magistrate Judge Pollak concludes that she "does not have confidence that if defendants comply with the CAFO, the violations plaintiffs complain of will cease." *See* R&R at 16.  This is clearly not a situation where EPA is taking any enforcement action with respect to leaking PCB light ballasts in City schools.

In their Objections, Defendants do no more than to restate the same strained and erroneous interpretation of the CAFO that the Report has already rejected: that NYCC's claims are barred in this

---

[23] As noted in our initial submission, the EPA website acknowledges that EPA regulates PCBs under both TSCA and RCRA.  See RCRA & PCBs, EPA, *available at:* http://www.epa.gov/region9/toxic/pcb/otherstatutes.html (last visited Jan. 27, 2012) (describing that TSCA's PCB regulations intersect with other federal statutes, including RCRA, CERCLA, the Clean Water Act, etc.).

[24] Although *Ctr. for Cmy. Action* provides absolutely no support to Defendants' TSCA integration argument, the case does provide strong support for the fact that vapors from PCB waste that has leaked from ballasts are also a RCRA waste.  *See* n. 16 *supra* and *Ctr. for Cmy. Action*, 2012 U.S. Dist. LEXIS 83051 at *23.

action because EPA, through the CAFO, is diligently prosecuting leaking PCB light ballasts.[25]  However,

Defendants acknowledge, as they must, that the CAFO originated from a prosecution by EPA, pursuant to

section 2615 of TSCA, of PCB-containing *caulk* that was discovered in New York City public school

buildings.[26]  *See* Def. Obj. at 10-11.  As the Report correctly concluded, the CAFO states on its face that it

relates solely to PCB caulk, rather than to PCB light ballasts.  *See* R&R at 14.  Indeed, nowhere in the

CAFO is there any mention of PCB light ballasts.  Likewise, the Work Plan to Address PCB Caulk in

NYC School Buildings ("PCB Caulk Plan"), which Defendants agreed to implement under the CAFO,

does not directly address the remediation or replacement of leaking PCB ballasts in any way.  The PCB

Caulk Plan is a two-stage process.  Stage 1 of the PCB Caulk Plan provides a highly detailed procedure

for conducting the Pilot Study at five schools.  Stage 2 sets forth the parameters for a Citywide PCB

Management Plan ("Citywide Plan").  As Defendants point out, the PCB Caulk Plan does have language

that requires Defendants to address non-caulk sources of PCBs that may be discovered during the Pilot

Study.  This obligation, however, is extremely limited in scope, and <u>at most</u> requires Defendants to

address non-caulk PCB sources in the five Pilot Schools – out of the more than 600 public school

buildings in New York City that are suspected to contain PCB ballasts.[27]  *See* R&R at 14.

It is clear that the CAFO was never intended to address PCB ballast leaks in any system-wide

way.  Magistrate Judge Pollak reached this same conclusion after her careful and thorough analysis of the

CAFO.  *See* R&R at 14 ("there is nothing to suggest that leaking PCB ballasts in other schools [beyond

the five Pilot Schools] were intended to be addressed").  The CAFO requires Defendants to promulgate a

---

[25] *Compare* Def. Obj. at 9-11 *with* Def. Mem. in Support at 16-18.

[26] Indeed, leaking PCB ballasts were not discovered until several months after the CAFO was signed.  SAC, ¶¶ 52-56.

[27] In their Objections, Defendants emphasize, as they did in their prior briefing, that EPA approved a modification to the CAFO to evaluate the effectiveness of light fixture replacement as a remedy for PCB ballast leaks at one pilot school, PS 3R.  *See* Def. Obj. at 9.  But Defendants' belief that this somehow suggests that the CAFO covers violations of leaking PCB light ballasts is flatly wrong.  Indeed, there would be no need to modify the CAFO to address PCB ballast leaks if the CAFO already covered PCB light ballasts, as Defendants insist is the case.  Even otherwise, the modification of the CAFO at PS 3R addressed PCB ballast violations at only *one* of the hundreds of school buildings where aging PCB ballasts are still being used.

Citywide Plan after the Pilot Study is completed, but Defendants have no meaningful commitment to implement any citywide remedy for PCB ballast leaks.  At most, the CAFO requires Defendants to propose a citywide remedy (which may or may not account for leaking PCB ballasts), to submit that proposal to various forms of public review, and to negotiate a possible implementation of the proposal with EPA.  The CAFO is otherwise entirely voluntary and non-binding on Defendants:  if EPA and Defendants fail to reach agreement following their negotiations, Defendants "will have no obligation to implement a Citywide PCB Management Plan under this CAFO."  *See* Def. Mem. in Support, Ex. A, PCB Caulk Plan, § III.C.d.  The CAFO is clearly not a prosecution of leaking PCB ballasts.

The conclusion is further buttressed by the rigor and complexity of the "science-based" process of public review contemplated in the CAFO.  As Defendants point out, the Citywide Plan requires Defendants to submit their proposal for a citywide remedy to EPA review, peer review, public participation, and a mandatory period of negotiations with EPA.  *See* Def. Obj. at 11.  This detailed and lengthy analysis may be appropriate for developing a remedy for PCB caulk, a building material for which no easy remediation method exists.  But such a drawn out process is plainly unnecessary to address leaking PCB ballasts, which can be removed and replaced easily without any need to submit proposals to extensive forms of scientific review and EPA approval.  The suggestion that peer review is somehow necessary to decide how and whether to replace a light is disingenuous.

This is clearly not a situation where EPA is prosecuting violations of leaking PCB ballasts, much less conducting any "diligent" prosecution.[28]  The Court should adopt the Report's recommendation that Defendants' Motion to Dismiss be denied because there is no diligent prosecution by EPA in this matter.

---

[28] The only specific objection raised by Defendants on this point is a curious comparison of the CAFO in this case with a consent order in *Hudson River Fisherman's Ass'n v. County of Westchester*, 686 F. Supp. 1044 (S.D.N.Y. 1988).  *See* Def. Obj. at 12.  The court in *Hudson River* allowed the plaintiffs to proceed past summary judgment because, as Defendants correctly point out, it found that the consent order at issue in the case "does not address or include" two potential sources of unpermitted discharges that form the basis of the plaintiff's claim.  *Id.* at 1052. This is more similar to the facts here than different, as Defendants seem to suggest.  There is no question that the CAFO, like the consent order in *Hudson River*, "does not address or include" any binding obligation for a citywide remedy for leaking PCB light ballasts, whether or not "the CAFO here contains provisions that expand the scope of Defendants' obligations."  *See* Def. Obj. at 12.  Nevertheless, *Hudson River* has been extensively briefed already, and Defendants' objection adds nothing to the thorough and well-reasoned recommendations of the Report.

19

**IV.**

**The Magistrate Judge Properly Rejected Defendants'
Primary Jurisdiction Argument and Determined
That This Court Can Adjudicate NYCC's Claims**

In their Motion to Dismiss, Defendants sought to have the Court dismiss NYCC's claims or to issue a stay under the doctrine of primary jurisdiction because, they asserted, any intervention by the Court would interfere with EPA's involvement in this case.  *See* Def. Br. at 37-39.  Defendants now object to the Report's recommended denial of that request.  *See* Def. Obj. at 12-13.  Defendants' Objections, however, are virtually the same arguments presented in their prior submissions, and none of their objections alter the Report's conclusion that the Second Circuit's test in *Nat'l Commc'ns Ass'n, Inc. v. Am. Tele. & Tele. Co.*, 46 F.3d 220, 222 (2d Cir 1995), for assessing whether a court should defer to the specialized knowledge of an agency, "militates in favor of a court resolution" in this case.[29]  R&R at 24.

As the Report correctly reasons, a judicial resolution of NYCC's claims is appropriate here because none of the four factors in *Nat'l Commc'ns Ass'n* weighs in favor of the Court's abstaining from hearing NYCC's claims.  *See* R&R at 24.  Violations of federal environmental statutes are clearly within the "competency and conventional experience" of judges, and Congress has specifically created jurisdiction for courts to entertain citizen suits brought under TSCA and RCRA.  *See* R&R at 24.  EPA has already interpreted the TSCA regulations at issue in this case, and determined that "light ballasts that are leaking PCBs are in violation of the law…."  *See* R&R at 24.  Furthermore, RCRA's imminent and substantial endangerment provision is an enforcement provision, and deals with questions of relief to be awarded by the courts, not by the agency.  *See* R&R at 24.  Finally, there is no danger of inconsistent outcomes if the Court allows NYCC's claims to proceed, because as described above, EPA is not actively pursuing this issue, and the CAFO has no provision obligating Defendants to take any action with respect to leaking PCB ballasts beyond the five Pilot Schools.  *See* R&R at 24.

---

[29] *Compare* Def. Obj. at 8-11 *with* Def. Reply Mem. at 3-4.

Rather than explaining why the *Nat'l Commc'ns Ass'n* factors should be applied any differently in this case, Defendants offer only a tepid challenge to the Report's observation that "courts are reluctant to apply the primary jurisdiction doctrine to a RCRA claim." *See* Def. Obj. at 12-13.  Defendants cite three cases as examples of when courts have applied the primary jurisdiction doctrine to environmental citizen suits, but only one, *McCormick v. Halliburton Co.*, 2012 U.S. Dist. LEXIS 46661 (W.D. Okla. Apr. 3, 2012), was not already before Mag. J. Pollak, and it too is entirely distinguishable and adds nothing to the analysis.[30]  Certainly, there are instances where a court should exercise its discretion to refer a matter to the specialized competence of an administrative agency, but this is not one of them.

NYCC respectfully asks the Court to adopt the Report's recommendation that Defendants' primary jurisdiction argument be denied.[31]

## V.

### The Magistrate Judge Properly Concluded that NYCC Has Complied With The Notice Requirements For TSCA and RCRA Citizen Suits

Defendants limit their objections to two narrow aspects of the Report's conclusion that NYCC complied with the relevant notice requirements.  First, they assert that NYCC's notice letters did not adequately reference its claims concerning "unremediated historic leaks," or "historically leaked PCBs." Second, they assert that NYCC's letters did not give sufficient notice of its storage, treatment and transportation claims under RCRA.  *See* Def. Obj. at 13-14.  In support of their Objections, Defendants

---

[30] The court in *McCormick* abstained from exercising jurisdiction over the plaintiff's RCRA claim because it involved issues that fit squarely within the specialized knowledge of the administrative agency, such as determining the extent of the threat posed by groundwater contamination, whether immediate remediation was required to protect health or the environment, and what type of remedy was best suited for the site.  *McCormick*, 2012 U.S. Dist. LEXIS 46661 at *6.  The *McCormick* court also found that its involvement would likely cause further delay, and significantly, that the defendant was already subject to oversight by the state environmental agency through a binding consent order that covered the same problem of groundwater contamination as plaintiff's RCRA claim. *McCormick*, 2012 U.S. Dist. LEXIS 46661 at *7-8.  None of these considerations are present in this case, and the Court should give *McCormick* no weight.

[31] Additionally, as to Defendant's argument that Plaintiff's claims are moot, Defendants have not raised any objection to the Report's finding that Defendants have "failed to carry their 'heavy burden'" on this issue.  *See* R&R at 26, *citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. TOC, Inc.*, 538 U.S. 167, 189 (2000).  Accordingly, the Report's findings on this issue should only be disturbed by this Court in the case of clear error.

once again rely on the identical arguments they raised in their prior submissions, and that Mag. J. Pollak properly rejected.[32] Defendants' two specific objections are off the mark and easily dispensed with.

First, NYCC's letters give more than sufficient notice of its claims regarding "past leaks" of PCBs. As the Report recognizes, NYCC's RCRA notice states that "[b]oth DOE and SCA are persons who have 'contributed' or are 'contributing' to [] *past* or present" violations of RCRA, and that "both DOE and SCA have contributed and continue to contribute to" such violations. *See* Def. Br., Ex. E at 2; R&R at 22. Despite Defendants' protestations, the Report correctly determined that this language "clearly references past conduct and gives sufficient notice of past leaks." R&R at 22. NYCC has provided Defendants with enough information to identify the violations related to past leaks of PCBs from light ballasts.[33]

Second, having carefully reviewed the record, Mag. J. Pollak correctly found that NYCC's RCRA letter provided sufficient information concerning its storage, treatment and transportation claims, *see* R&R at 22. NYCC's RCRA letter explicitly references its claim that Defendants are liable under RCRA's imminent and substantial endangerment provision, § 7002, for their "<u>storage, treatment, [and] transportation</u>" – the very violations as to which Defendants assert they were not notified – of a "solid or hazardous waste." *See* Def. Mem. in Support, Ex. E at 2. As stated above, there can be no doubt that Defendants are fully aware that the RCRA violations noticed by NYCC in this case relate to leaking PCB

---

[32] *Compare* Def. Obj. at 13-14 *with* Def. Mem. in Support at 18-20; Reply Mem. at 14-15. Defendants do not challenge Mag. J. Pollak's correct determination that, as to present and future PCB ballast leaks, NYCC has provided Defendants and EPA with sufficient notice of its intention to bring suit under the citizen suit provisions of TSCA and RCRA. *See* R&R at 22. There is no error with this finding, and the Court should adopt Mag. J. Pollak's recommendation that NYCC be permitted to proceed with these claims.

[33] Because the plain language of NYCC's notice letters undercuts their position, Defendants try to recast a case, *Brod v. Omya, Inc.*, 653 F.3d 156 (2d Cir. 2011), that has been extensively addressed already, see Def. Mem. in Support at 16; Reply Mem. at 14; and Tr. at 30, 34, 36, and in which Mag. J. Pollak found Defendants' reliance to be "misplaced." *See* R&R at 21. Previously, Defendants erroneously urged that *Brod* requires NYCC's notice letters to specifically identify each and every leaking PCB ballast – an interpretation that the Report rejected. *See id.* Now, Defendants appear to suggest that *Brod* requires NYCC to provide specific instances of past leaks. *See* Def. Obj. at 13-14. Both interpretations miss the holding of *Brod*, that a notice letter must identify the contaminant alleged to be the basis of a violation with sufficient specificity when an alleged violation of RCRA depends on the presence or release of that particular contaminant. *See Brod*, 653 F.3d 169. NYCC has clearly identified PCBs as the contaminant giving rise to its claims in this case. Defendants' recycled interpretation of *Brod* is no more correct than its original reading and should be rejected.

light ballasts, and that NYCC has provided sufficient information for Defendants to identify the problem. That is all the regulations require. *See* R&R at 21, citing *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, No. C 09-3704, 2010 WL 1881595, at *3 (N.D. Cal. May 10, 2010).

Under these circumstances, NYCC has clearly provided Defendants with "sufficient information to permit the recipient to address the alleged violations."[34]  NYCC's notice letters identify clearly the activity that forms the basis of its claims: leaking PCB light ballasts in New York City public schools.[35] There can be no doubt, particularly under the flexible standard for assessing the sufficiency of notice,[36] that Defendants possess ample information to identify and address its violations of TSCA and RCRA, as the Report correctly found. *See* R&R at 22.

Defendants' argument that it did not receive sufficient notice of its violations concerning PCB ballast leaks is especially "specious" considering that Defendants, and not NYCC, exercise absolute and total control over and supervise maintenance of the school buildings. *See* R&R at 21-22.  NYCC simply has no access to T12 light fixtures or even the buildings. *See* R&R at 21-22.

Defendants have been provided sufficient notice of NYCC's claims in this case, and the Court should adopt the Report's recommendation to dismiss Defendants' jurisdictional challenge on this basis.

---

[34] Notice under the regulations of RCRA, 40 C.F.R. § 254.3(a), and TSCA, 40 C.F.R. § 702.62(a), must include "sufficient information to permit the recipient" to identify the violation.  Though neither Congress nor the Supreme Court have defined the content that is sufficient to satisfy these regulatory requirements of RCRA and TSCA, the Second Circuit has held that "the content of a [Notice of Intent to Sue] must serve the purpose of giving 'the appropriate governmental agencies an opportunity to act and the alleged violator an opportunity to comply.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 166 (2d Cir. 2011), quoting *Dague v. City of Burlington*, 935 F.2d 1343, 1354 (2d Cir. 1991).  In considering EPA's regulatory notice requirement, the Second Circuit has "refused to 'allow form to prevail over substance,'" and has looked instead to "what the particular notice given may reasonably be expected to accomplish." *See Catskill Mountain Chapter of Trout Unlimited, Inc.* v. *City of New York*, 273 F.3d 481, 487 (2d Cir. 2001), *citing Dague*, 935 F.3d at 1354.

[35] *See* Plaintiff Mem. at 31-32.  For example, NYCC gave notice that "[l]eaking PCB ballasts violate TSCA on its face," and that "the disposal that occurs when a ballast leaks … is unauthorized and violates TSCA." *See* Def. Br., Ex. D, 4.  In the RCRA notice, NYCC stated that "[l]eaking PCB-containing lighting ballasts in NYC schools present an 'imminent and substantial endangerment to health or the environment,'" and provided four grounds for its assertion. *See* Def. Mem. in Support, Ex. E, 2-4.

[36] This requires "no more than reasonable specificity" as to the nature and time of the alleged violations, not a description of "every detail of every violation." *See San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir 2002), *quoting Catskill Mountain*, 273 F.3d at 488.

23

**VI.**

**Defendants' Objections to Certain Characterizations
in the Report are Misleading and Should be Rejected**

Defendants object to statements in the Report that describe the reasons they prepared the Greener Schools Plan pursuant to the energy-efficiency mandates of Local Laws 87 and 88. *See* Def. Obj. at 28. Defendants believe that the Report mischaracterizes the Greener Schools Plan as having been "solely proposed for energy efficient and not in anyway [sic] developed to address PCBs." Def. Obj. at 28.

Defendants seek credit because their meager efforts to address leaking PCB ballasts happen to go beyond their obligations to do so under Local Laws 87 and 88 – which impose none at all. Rather than to take responsible action to address the problem of leaking PCBs in a reasonable timeframe, Defendants' plan will take 10 years to implement. And, because it is entirely voluntary, there is no assurance that Defendants will actually implement the plan within 10 years, or that Defendants will actually address all PCB ballasts, whether they are leaking or inevitably will leak. In any event, as is clear from even a cursory reading of the Greener Schools Plan itself, the Plan is primarily an initiative to meet energy efficiency goals which includes upgrades to boilers, light, sensors and insulation. *See* Giorgio Decl., Ex. F attached to Plaintiff Mem. The Report's description of the Greener Schools Plan is entirely consistent with the language of the document.

Defendants also object to a statement in the Report that the Greener Schools Plan "was not developed in response to EPA's investigation into PCBs in schools." *See* R&R at 15 n.9. Again, Defendants sidestep the real point. Irrespective of the whether Defendants developed the Greener Schools Plan at the suggestion of EPA, it is undeniable that Defendants are not subject to any sort of "close oversight by EPA" as the Report points out. *See* R&R at 15 n.9; SAC, Ex. F (EPA has concluded that it has no authority to "approve or disapprove the City's proposal"). Defendants voluntarily adopted the Greener Schools Plan and EPA has no meaningful oversight of how or when it is implemented, or even whether it is implemented at all.

NYCC respectfully asks the Court to deny Defendants' request to modify the Report's finding.

24

**CONCLUSION**

For the reasons stated above, NYCC respectfully requests that this Court adopt the Report's recommendations, and deny Defendants' motion to dismiss.

Respectfully submitted,

Richard A. Horsch (RH-4486)
Mihir A. Desai (MD-8951)
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

Miranda Massie (MM-7721)
Christina Giorgio (Pro Hac Vice)
New York Lawyers for the Public Interest
151 West 30th Street, 11th Floor
New York, NY 10001
(212) 244-4664

Dated:  October 4, 2012
        New York, NY

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

NEW YORK COMMUNITIES FOR
CHANGE,

      Plaintiff,

        v.

NEW YORK CITY  DEPARTMENT OF
EDUCATION and NEW YORK CITY
SCHOOL CONSTRUCTION AUTHORITY,

      Defendants.

**CERTIFICATE OF SERVICE**

Case No. CV 11-3494

Hon. Sterling Johnson, Jr. (SJ) (CLP, MJ)

I, Mihir A. Desai, declare under penalty of perjury, that I have served a copy of the Plaintiff NYCC's Response in Opposition to Defendants' Objections to the Report and Recommendation upon Defendants through their attorney on the date and via the method indicated below:

Daniel Greene
New York City Law Department
100 Church Street
New York, NY 10007
Via email by consent
On October 4, 2012

Dated:  October 4, 2012
       New York, NY

By: _____
      Mihir A. Desai
      White & Case, LLP
      1155 Avenue of the Americas
      New York, NY 10036
      (212) 819-8200